UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN KING,

       Plaintiff,　　　　　　　　　　　　　　　Hon. Janet T. Neff

v.　　　　　　　　　　　　　　　　　　　　　Case No. 1:09-CV-350

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision. (Tr. 31, 52). He possesses a General Equivalency Diploma (GED) and worked previously performing ground maintenance, appliance delivery, and assembly. (Tr. 82, 1498).

Plaintiff applied for benefits on January 11, 2005, alleging that he had been disabled since March 1, 2003, due to arthritis, foot problems, cardiovascular disease, and high blood pressure. (Tr. 52, 54, 97). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 32-51). On May 2, 2007, Plaintiff appeared before ALJ B. Lloyd Blair, with testimony being offered by Plaintiff and vocational expert, Donald Hecker. (Tr. 1493-1527). In a written decision dated May 24, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 20-31). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**[1]

In June 1996, Plaintiff received in-patient hospital treatment for alcohol and drug dependency. (Tr. 1333, 1340, 1342).

On or about August 25, 1997, Plaintiff dropped a "glass shelf" on his right foot, lacerating a tendon, for which surgery was performed three days later. (Tr. 1087, 1097).

Treatment notes dated July 1, 1998, indicate that Plaintiff was experiencing alcohol dependence. (Tr. 1319, 1323-27).

On September 4, 1998, Plaintiff underwent surgery to repair a thrombosis[2] of his left femoral artery. (Tr. 162-67). On February 3, 1999, Plaintiff participated in a venous ultrasound examination of his left lower extremity, the results of which revealed no evidence of deep vein thrombosis. (Tr. 448). X-rays of Plaintiff's chest, taken on September 11, 1999, revealed "no evidence of acute cardiac or pulmonary disease." (Tr. 637). X-rays of Plaintiff's chest, taken the following day, were "unremarkable." (Tr. 638).

On November 28, 2000, Plaintiff participated in an exercise stress test, the results of which revealed that he "demonstrates an average level of fitness for [his] age." (Tr. 1049).

On September 21, 2001, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 383-86). The results of an EKG examination were "within normal limits" and a chest x-ray was "negative." (Tr. 386, 402). Plaintiff's pain resolved after being given morphine. (Tr. 384).

---

[1] Plaintiff is not challenging the ALJ's findings and conclusions regarding his alleged emotional impairment. The following discussion of the medical record will, therefore, focus on Plaintiff's alleged physical impairments.

[2] A thrombosis refers to the formation or presence of a blood clot in a blood vessel. *See* Thrombosis, available at http://www.medterms.com/script/main/art.asp?articlekey=25023 (last visited on July 19, 2010).

On January 31, 2003, Plaintiff was hospitalized to treat his addiction to alcohol and marijuana. (Tr. 198-200). Plaintiff reported that he consumes "up to" one 12-pack of beer and one pint of vodka daily, "and more on the weekends, about double." (Tr. 198). Plaintiff also reported that he smokes marijuana "twice weekly." (Tr. 198). Plaintiff was discharged from the hospital on March 12, 2003. (Tr. 195-97).

On March 8, 2004, Plaintiff was hospitalized to treat his alcohol dependency. (Tr. 193-94). Plaintiff reported that he "was drinking up to a case of beer per day." (Tr. 193). Plaintiff was discharged on March 10, 2004, with a prescription for Antabuse[3] and instructions to attend Alcoholics Anonymous. (Tr. 194).

On August 1, 2004, Plaintiff reported that he enjoys riverbank fishing, camping, the outdoors, and watching videos. (Tr. 93). Plaintiff reported that he engages in these activities "once a week (videos daily)." (Tr. 93).

On October 7, 2004, Plaintiff was examined by Dr. Helene Jones. (Tr. 225-27). Plaintiff reported that he "continues to drink 48-60 beers a week." (Tr. 225). Plaintiff reported that he had not had anything to drink for two days, to which the doctor reported that Plaintiff was "extremely tremulous." (Tr. 225). Plaintiff reported that he had custody of his two children and that he "can do his activities of daily living, and he does the cooking, shopping, etc., and keeps the home for his kids." (Tr. 226). Aside from the fact that Plaintiff appeared to be experiencing alcohol withdrawal, the results of a physical examination were unremarkable. (Tr. 226-27).

---

[3] Antabuse is used to treat "chronic alcoholism" and causes "unpleasant effects when even small amounts of alcohol are consumed." *See* Disulfiram, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000726 (last visited on July 19, 2010).

On June 28, 2005, Plaintiff reported that he was a "handy man" and "has been doing odd jobs for about one year including small roofing jobs, cement repair, and the like." (Tr. 481).

On August 21, 2005, Plaintiff reported that he enjoys watching television, playing computer games, fishing, and camping. (Tr. 78). Plaintiff reported that he engaged in these activities "daily." (Tr. 78).

On November 11, 2005, Plaintiff was taken to the hospital after he began experiencing chest pain while "doing lawn work." (Tr. 684-87). Chest x-rays were "negative" and the results of "multiple EKGs" were unremarkable. (Tr. 685). A CT scan of Plaintiff's thorax was "unremarkable" with "no evidence of aortic aneurysm or aortic dissection." (Tr. 729). Plaintiff reported that he drinks "large amounts of alcohol." (Tr. 690). Plaintiff was admitted to the hospital for further evaluation. (Tr. 686). Plaintiff "did well" during his hospital stay, at one point stating, "boy, I miss deer season, I love to hunt." (Tr. 674, 709). Plaintiff was diagnosed with "acute pancreatitis induced by alcohol use" and "delirium from alcohol withdrawal." (Tr. 673). He was discharged from the hospital on November 21, 2005, with instructions to "quit alcohol." (Tr. 673).

On January 20, 2006, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 1002-03). The results of a physical examination were unremarkable. (Tr. 1002-03). The results of an EKG were unremarkable and chest x-rays revealed "no acute disease." (Tr. 1003). Plaintiff reported that "his last drink was 2 months ago," but alcohol testing was "positive." (Tr. 1002-03). Plaintiff was given nitroglycerin which "completely relieved" his pain. (Tr. 1002).

On May 16, 2006, Plaintiff reported to the emergency room complaining of chest pain. (Tr. 1295-96). The results of a physical examination and EKG were unremarkable. (Tr. 1295-96). Plaintiff participated in an echocardiogram examination, the results of which were "normal,"

as well as a stress echocardiogram, the results of which revealed "no significant abnormalities." (Tr. 1295, 1303). Plaintiff's chest pain resolved with nitroglycerin and morphine. (Tr. 1292). Plaintiff was diagnosed with acute alcoholic pancreatitis. (Tr. 1295). His chest pain was characterized as "musculoskeletal and gastritis/esophagitis." (Tr. 1295).

On August 23, 2006, Plaintiff reported that he was "self-employed" working "20-30 hours per week." (Tr. 1372).

On September 25, 2006, Plaintiff underwent a thrombectomy[4] and iliofemoral bypass to repair a left femoral artery aneurysm. (Tr. 1134-36, 1146-47). Treatment notes dated October 19, 2006, reveal that Plaintiff's left lower extremity was "doing well." (Tr. 1360-62).

X-rays of Plaintiff's chest, taken on December 28, 2006, were "normal" with no evidence of active intrathoracic disease. (Tr. 1267). A CT scan of Plaintiff's thorax, performed the same day, was unremarkable with no evidence of pulmonary embolus. (Tr. 1265-66). X-rays of Plaintiff's lumbar spine, taken on January 26, 2007, revealed "degenerative changes," with no evidence of misalignment or pars defect.[5] (Tr. 236).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from (1) status post-femoral bypass; (2) depression; (3) anxiety; (4) alcohol abuse; and (5) hypertension, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any

---

[4] Thrombectomy refers to the procedure to remove a clot (a thrombus). *See* Thrombectomy, available at http://www.medterms.com/script/main/art.asp?articlekey=5763 (last visited on July 19, 2010).

[5] The pars is a portion of the vertebra that helps keep the vertebra in position. *See* Pars Defect, available at http://catalog.nucleusinc.com/generateexhibit.php?ID=4413 (last visited on July 19, 2010). A defect or fracture of the pars allows the vertebra to slip forward out of position. *Id.*

impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-26). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 26-31). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience,

---

[6]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift up to 20 pounds and 10 pounds frequently; (2) he can sit, stand, or walk for 6 hours during an 8-hour workday; (3) he cannot use ladders, ropes, or scaffolds; (4) he cannot work with concentrated exposure to hazards, such as dangerous/unprotected machinery or work at unprotected heights; (5) he cannot engage in commercial driving; (6) he can only perform work with 1, 2, or 3 step instructions; (7) he cannot perform work requiring concentration on detailed/precision tasks or multiple/simultaneous tasks; and (8) he cannot perform work requiring him to read, compute/calculate, problem-solve, or reason. (Tr. 26). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his

limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

The vocational expert testified that there existed approximately 38,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 1521-23). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

a. The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, the ALJ determined, at step two of the sequential analysis, that Plaintiff suffered from various severe impairments. Plaintiff asserts that the ALJ erred, however, by failing to recognize that he also suffered from severe insomnia, as well as severe back, neck, and left foot impairments.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

The record supports the ALJ's conclusion Plaintiff did not suffer from severe insomnia, back, neck, or foot impairments. Moreover, even if the ALJ's conclusion in this regard is in error, the result is the same.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that

where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from severe insomnia, back, neck, or foot impairments, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

        b.      The ALJ Properly Assessed the Medical Evidence

On February 8, 2007, Plaintiff participated in a functional capacity examination conducted by rehabilitation consultant, Jeffrey Griffiths, M.A. (Tr. 469-72). Mr. Griffiths concluded that "it would be very difficult for [Plaintiff] to be a valid/consistent employee because of ongoing functional/disability related issues." (Tr. 471-72). The following day, Plaintiff participated in a functional capacity evaluation conducted by physical therapist, Stephanie Radawiec. (Tr. 473-76). Ms. Radawiec concluded that "sedentary levels of activity are recommended due to cardiac responses to simulated work activity." (Tr. 474). Plaintiff asserts that the ALJ failed to accord sufficient weight to these particular opinions.

First, because Griffiths and Radawiec each examined Plaintiff on only one occasion they possess no particular insight into Plaintiff's impairments and limitations. *See, e.g., Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Second, neither Griffiths nor Radawiec are considered acceptable medical sources whose opinions are entitled to any deference. *See* 20 C.F.R. §§ 404.1513, 404.1527. Nevertheless, the ALJ considered their opinions and properly accorded them little weight. As the ALJ correctly observed, Mr. Griffiths' opinion was not based upon objective medical evidence or the results of objective medical examination, but was instead "largely based on [Plaintiff's] self-reporting of his functional limitations." Ms. Radawiec's opinion is simply inconsistent with the medical evidence. Specifically, the record fails to support her opinion that Plaintiff suffers from a cardiac condition that limits him to only sedentary work. In sum, there exists substantial evidence supporting the ALJ's decision to accord little (if any) weight to these particular opinions.

      c.      The ALJ Properly Relied on the Vocational Expert's Testimony

13

Finally, Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 38,000 such jobs. Because there was nothing improper or incomplete about the hypothetical question he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    Respectfully submitted,

Date: August 16, 2010        /s/ Ellen S. Carmody
    ELLEN S. CARMODY
    United States Magistrate Judge